UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Case No. 2:10-cr-31
HON. ROBERT HOLMES BELL

JODIE LYNN CARLEY,

    Defendant.
_____/

### REPORT AND RECOMMENDATION

Defendant Jodie Lynn Carley moves to suppress evidence that was seized after a traffic stop. The Government has filed a response and a hearing was held on November 22, 2010. Testifying at the hearing were Trooper William Luebs of the Michigan State Police and Deputy Dustin Stempki of the Mackinaw County Sheriff's Department. For the reasons that follow, it is recommended that the Motion to Suppress be denied.

Defendant was driving on U.S. Highway 2 on November 20, 2009, when she was pulled over by Deputy Stempki of the Mackinaw County Sheriff's Department. Defendant quickly admitted that she had narcotics in her trunk. The narcotics were confiscated. Defendant argues that the traffic stop was illegal because it was based solely on the uncorroborated statements of an informant that did not justify a Fourth Amendment seizure.

Trooper William Luebs of the Michigan State Police, assigned to the Upper Peninsula Substance Enforcement Team (UPSET), received a telephone call in August of 2009 from an individual who only gave her first name (hereinafter CI). The CI informed Luebs that defendant was

selling prescription drugs in the Traverse City area. The CI estimated defendant's age as 27 or 28 years old and stated that defendant worked at the Tribal pharmacy in Manistique, Michigan, and was taking prescription drugs from the pharmacy and selling them in Traverse City. Defendant allegedly had sold Vicodin, Xanix and other drugs. Defendant's cell phone number, vehicle and registration number were identified by the CI. Trooper Luebs was told that defendant traveled to Traverse City on Fridays and usually left from work.

Trooper Luebs then began to verify the CI's information. He ran a lien check and a Michigan Secretary of State check. He verified defendant's name, age and vehicle registration, which matched the CI's information. The information provided to Luebs, to the extent it could be checked, was accurate. After the initial telephone call in August of 2009, the CI and Luebs had additional telephone conversations. The CI gave Luebs her full name. The CI indicated an unwillingness to participate in a controlled buy. In November of 2009, the CI informed Luebs that defendant would be traveling from Manistique to Traverse City to sell drugs on November 13, 2009. Therefore, on November 13, 2009, Luebs conducted surveillance at the Tribal Health Clinic, but did not observe defendant's vehicle at the location. Luebs attempted to locate defendant's vehicle in Manistique, without success. Luebs concluded that defendant had already left for Traverse City. On Friday, November 20, 2009, Luebs received a telephone call from the CI. Luebs was told that defendant would be traveling to Traverse City with approximately 1,000 Vicodin pills and would be driving her Chevrolet Impala or a green Pontiac Grand Prix. Luebs went to the Tribal Health Clinic. The Chevy Impala was in the parking lot. Luebs observed a female exit the Tribal Community Center and walk to the Impala. She placed a plastic bag in the rear seat and opened the trunk where it appeared she placed something inside. Luebs followed the vehicle as it traveled eastbound on U.S. Highway 2. The vehicle was traveling 60 to 65 miles per hour in a 55 mile per

hour speed zone. Luebs also observed a dangling ornament hanging from the rear view mirror, a civil infraction. Luebs requested that a marked vehicle pull the suspect vehicle over. Deputy Stempki contacted Luebs. Luebs informed Stempki of the ongoing drug investigation and requested that Stempki make a stop of defendant's vehicle. Thereafter, Stempki pulled the vehicle over for following too closely to another vehicle and because of the dangling ornament hanging from the rear view mirror. The stop for the two civil infractions was a pretext stop motivated by the ongoing drug investigation by Luebs.

Deputy Stempki approached the vehicle and took defendant's license and registration. Shortly thereafter, Luebs approached the vehicle and identified himself. He asked defendant where she was going. She stated she was going to Traverse City and responded that she was employed by the Tribal Health Center as a pharmacy technician. Trooper Luebs advised defendant that he had received information that she was transporting Vicodin pills and asked if any controlled substances were in the car. Defendant looked down and said "they're in the trunk." When Trooper Luebs asked what was in the trunk, defendant responded that the pills were in the trunk and that she had 1000 Vicodin pills and 80 Xanax pills. Defendant opened the trunk and admitted that she stole the pills from the pharmacy and intended to sell the pills for $2.00 per pill to "dirty-looking people" in Traverse City. Defendant admitted that she had taken and sold pills in the past.

Defendant maintains that stopping defendant for traffic violations was a pretext to stop defendant for her alleged drug crimes. According to defendant, the traffic violation cannot support such a stop. Therefore, defendant maintains the Court must determine whether at the time of the stop, there was a reasonable suspicion of criminal drug activity to support a stop. The Government argues that the traffic violation can be used to support the stop. Alternatively, the

government argues that there was a reasonable suspicion of criminal drug activity justifying a stop for that reason.

In *Whren v. United States*, 517 U.S. 806 (1996), undercover police officers patrolling a known drug area observed a Nissan Pathfinder stopped at an intersection for an unusual amount of time. The officers suspected the occupants of the Pathfinder may have been involved in illegal drug activities. The Pathfinder made a right turn without signaling and proceeded at an "unreasonable" speed. The officers caught the Pathfinder at a stop light and one of the officers approached the vehicle to discover that the driver had two bags of cocaine in his hands. The defendants argued that a traffic stop should not be used as a means to investigate other crimes where there was no probable cause to justify an investigation for drug activity. The Supreme Court rejected defendants' contention. The Supreme Court held that the reasonableness of a traffic stop does not depend on the actual motivations of the officer making the stop. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813. The test is whether the traffic stop was reasonable under the circumstances. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" *Utah v. Stuart*, 547 U.S. 398, 404 (2006).

The Sixth Circuit explained in *U.S. v. Herbin*, 343 F.2d 807 (6th Cir. 2003):

> In *Whren v. United States,* 517 U.S. 806, 812-13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Supreme Court held that the legality of a traffic stop turns on the validity of the officers' objective explanation for making the stop, not on the subjective intentions of the officers in initiating the stop. A traffic stop supported by probable cause, *Whren* makes clear, may not be invalidated under the Fourth (and Fourteenth) Amendment on the ground that the officers stopped the car for "pretextual" reasons which is to say, acted upon a violation of one set of laws (*e.g.,* run-of-the-mill traffic laws) in order subjectively to enforce another set of laws (*e.g.,* drug-trafficking laws). In the words of *Whren:* "Subjective intentions play no role in ordinary,

probable-cause Fourth Amendment analysis." *Id.* at 813, 116 S.Ct. 1769. *See also Arkansas v. Sullivan,* 532 U.S. 769, 771-72, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001) (per curiam) (holding that a custodial arrest for a traffic violation and search incident to arrest do not violate the Fourth Amendment just because the officer had an improper subjective motivation for making the stop).

Both before and after *Whren,* this Court has adhered to this principle. In *United States v. Bailey*, 302 F.3d 652 (6th Cir.2002), in rejecting a similar argument, the Court held that two officers had lawfully stopped a motorist whom they had witnessed driving down the wrong side of the road. That the officers were allegedly "making traffic stops" as a "pretext" to investigate complaints of drug activity was "irrelevant," we emphasized, because the officers "had probable cause to stop [the motorist] for a traffic violation." *Id.* at 656-57. Nor did we stray from this path in *United States v. Burton,* 334 F.3d 514 (6th Cir.2003), in holding that the Fourth Amendment permitted a police officer to stop a car that he observed parked in a no-parking area, regardless of the officer's subjective motivation for the stop. *Id.* at 516-17. *See also United States v. Hill,* 195 F.3d 258, 264 (6th Cir.1999) ("an officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle"); *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir.1993) (en banc).

\* \* \*

From beginning to end, the constitutionality of a traffic stop under the Fourth Amendment depends on the objectively reasonable justifications for the officers' actions, not their subjective intentions.

Detective Stempki indicated that the stop was made for two civil infractions, a dangling ornament from the rear view mirror and following too close to the car in front of defendant. Defendant has not argued that there was not probable cause to stop the vehicle for these two reasons. Detective Stempki testified that defendant was only one car length behind the car in front of her on U.S. Highway 2. This provided probable cause to make the traffic stop.

Even should the Court find that there was not probable cause to justify the stop for the two alleged civil infractions, defendant's motion to suppress should be denied. Defendant argues

that the stop can only be justified if there was a reasonable suspicion of illegal drug activity since that was the subjective basis for the seizure. The facts presented at the hearing establish that there was a reasonable suspicion of illegal drug activity by the defendant justifying the stop. Trooper Luebs received information from a confidential informant that he was able to corroborate. The CI provided information to Luebs on numerous occasions. Luebs was able to verify defendant's name, age, the make and model of the vehicle she drove, and her employment at the Tribal pharmacy. On the day the stop was made, the CI notified Luebs that defendant would be traveling from Manistique to Traverse City. Luebs had defendant under surveillance at the Tribal Center and observed her leaving the center, placing items in her car and in her trunk, and then traveling in the direction of Traverse City. This corroborated the CI's information that defendant would be traveling on that day to Traverse City with contraband.

Defendant relies upon *Florida v. J.L.*, 529 U.S. 266 (2000), for the proposition that the information provided by the CI in this case cannot support the traffic stop. In *Florida v. J.L.*, the police received an anonymous tip that a young African American would be standing at a specific bus stop wearing a plaid shirt and carrying a gun. Police were dispatched to the bus stop and saw three African Americans, one wearing a plaid shirt. Police officers seized the individual wearing the plaid shirt, conducted a frisk, and discovered a weapon. The Court explained:

> In the instant case, the officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, see *Adams v. Williams,* 407 U.S. 143, 146-147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," *Alabama v. White,* 496 U.S., at 329, 110 S.Ct. 2412. As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits "sufficient indicia of reliability to

provide reasonable suspicion to make the investigatory stop." *Id.,* at 327, 110 S.Ct. 2412. The question we here confront is whether the tip pointing to J.L. had those indicia of reliability.

In *White*, the police received an anonymous tip asserting that a woman was carrying cocaine and predicting that she would leave an apartment building at a specified time, get into a car matching a particular description, and drive to a named motel. *Ibid.* Standing alone, the tip would not have justified a *Terry* stop. 496 U.S., at 329, 110 S.Ct. 2412. Only after police observation showed that the informant had accurately predicted the woman's movements, we explained, did it become reasonable to think the tipster had inside knowledge about the suspect and therefore to credit his assertion about the cocaine. *Id.*, at 332, 110 S.Ct. 2412. Although the Court held that the suspicion in *White* became reasonable after police surveillance, we regarded the case as borderline. Knowledge about a person's future movements indicates some familiarity with that person's affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband. We accordingly classified *White* as a "close case." *Ibid.*

The tip in the instant case lacked the moderate indicia of reliability present in *White* and essential to the Court's decision in that case.

Unlike the situation in both *Florida v. J.L.* and *Alabama v. White*, the tip in the instant case was not from an anonymous source, but was from a known source. In *United States v. Craig*, 2009 WL 40004 (6th Cir. 2009) (copy attached), the Court explained:

It is well-settled that a tip from a reliable informant likewise may justify a *Terry* stop. *Smoak,* 460 F.3d at 779. Reasonable suspicion "requires that a tip be reliable *in its assertion of illegality,* not just in its tendency to identify a determinate person." *Caruthers,* 458 F.3d at 465 (quoting *Florida v. J.L.,* 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000)). Tips from identified citizens have a high indicia of reliability, in part because such witnesses risk adverse consequences for providing faulty information. *Id.*

The facts of the instant case are much closer to *Alabama v. White* in that the information from the CI was corroborated. In addition, Luebs observed defendant leaving Manistique at the approximate time the CI indicated the defendant would depart, taking a route consistent with traveling to Traverse

- 7 -

City. This is similar to *Alabama v. White* and unlike *Florida v. J.L.* Furthermore, the CI was known to Trooper Luebs and the two had numerous telephone conversations. Accordingly, the Court finds that the facts presented to Trooper Luebs at the time of the traffic stop provided reasonable suspicion that defendant was engaged in illegal drug activity.

Defendant does not challenge the length of the traffic stop. Nor does defendant contend that the consent received to search for the drugs was in violation of the Rules of Criminal Procedure. Nothing in the record would support such an assertion.

Accordingly, it is respectfully recommended that defendant's Motion to Suppress (Docket #6) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: November 29, 2010